UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Kalil Wesley Dunn,<br><br>Defendant. | Case No. 17-cr-168 (SRN/KMM)<br><br>**MEMORANDUM OPINION AND ORDER** |

Thomas Calhoun-Lopez and Craig R. Baune, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Kalil Wesley Dunn, Reg. No. 21167-041, Federal Corrections Institute Pekin, P.O. Box No. 5000, Pekin, Illinois 61555, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

Before the Court is Defendant Kalil Wesley Dunn's *pro se* Motion to Vacate, Set Aside, or Correct Sentence [Doc. No. 88] pursuant to 28 U.S.C. § 2255 (2018), in which he argues that he received ineffective assistance of counsel before this Court and the United States Court of Appeals for the Eighth Circuit. (Def.'s Mem. in Supp. of § 2255 Mot. (Def.'s Mem.) [Doc. No. 88] at 6–10.) For the following reasons, the Court **DENIES** Dunn's § 2255 motion. Moreover, while it does not appear Dunn has requested an evidentiary hearing or certificate of appealability, to the extent such a request is implicit, the Court **DENIES** both requests.

1

## I. BACKGROUND

### A. Factual Background and Guilty Plea

The facts of this case are well known to the Court, *see United States v. Dunn*, No. 17-cr-168 (SRN/KMM), 2018 WL 481846 (D. Minn. Jan. 19, 2018), and were discussed by the Eighth Circuit in Dunn's appeal. *See United States v. Dunn*, 928 F.3d 688 (8th Cir. 2019). Moreover, while there were two searches at issue in Dunn's case, his § 2255 motion relates only to evidence obtained from an April 12, 2017 search of his vehicle. Accordingly, the Court briefly recounts the facts with a particular focus on the April 12, 2017 incident.

#### 1. April 12, 2017 and June 20, 2017 Incidents

On April 12, 2017, at around 1:00 a.m., Dunn fell asleep behind the wheel while driving on a Minneapolis, Minnesota street. *Dunn*, 928 F.3d at 690. After hitting three parked cars, his vehicle spun to a stop in the middle of the street with heavy front-end damage and a flat tire. *Id.* The vehicle could not be driven safely due to the extensive damage and flat tire. *See id.* (noting the vehicle was "undriveable"); *Dunn*, 2018 WL 481846, at *1. Shortly after the accident, Minneapolis police officers arrived on scene to find Dunn's vehicle sitting in the street, facing the wrong direction, and blocking traffic. *Dunn*, 928 F.3d at 690. Dunn was handcuffed and put in the back of the officers' squad car shortly after the police arrived, although no tests were conducted to determine if Dunn was intoxicated. (*See* Mot. to Suppress H'rg Tr. (H'rg Tr.) [Doc. No. 32] at 28–29, 32.) And although Dunn had already arranged for private towing, the officers chose to tow and impound his vehicle—pursuant to Minneapolis Police Department policy—given its undriveable status. *Dunn*, 928 F.3d at 690. Minneapolis Police Department policy also required that the officers perform an inventory

2

search of Dunn's vehicle before towing it. *Id.* at 690–91. That search resulted in the discovery of two semi-automatic pistols, two baggies containing crack cocaine, and two digital scales. *Id.* at 691. Dunn was detained but released from local custody on April 16, 2017. *Id.*

About two months later, on June 20, 2017, Dunn was involved in another incident which, although not at issue here, resulted in police discovering cocaine, a loaded handgun, and a magazine drum with ammunition in Dunn's vehicle. *Id.*

### 2. Indictment, Pretrial Proceedings, and Guilty Plea

On July 19, 2017, based on the two vehicle stops, Dunn was indicted and charged with one count of carrying a firearm during and in relation to a drug trafficking crime (from the April 12th incident), two counts of being a felon in possession of a firearm (one from each incident), and two counts of possession with the intent to distribute cocaine base (one from each incident). (*See* Indictment [Doc. No. 10].) He was appointed counsel. (*See* Order Appointing Counsel [Doc. No. 6].) On August 18, 2017, Dunn moved to suppress all evidence seized as a result of both the April 12th and June 20th searches of his vehicles. (*See* Motion to Suppress Evid. [Doc. No. 21] at 1.) With respect to the April 12th incident, Dunn asserted that officers had no legal basis for the search. (*Id.*)

On September 12, 2017, Magistrate Judge Katherine M. Menendez held an evidentiary hearing on, among other things, Dunn's motion. Six witnesses, including Dunn, testified. (*See* H'rg Tr. at 13, 45, 54, 91, 115, 123.) Following the hearing, Magistrate Judge Menendez recommended denying Dunn's motion to suppress. *See United States v. Dunn*, No. 17-cr-168, 2017 WL 9274917 (D. Minn. Nov. 30, 2017). With respect to the April 12th incident, the magistrate judge first noted that the government had advanced two potential legal grounds

3

for the search of Dunn's vehicle: search incident to a lawful arrest for driving while intoxicated, and search pursuant to the police department's towing policy. *Id.* at *3. However, the government only seriously relied on the towing policy basis for the search. *Id.* The judge did note that with respect to the driving-while-intoxicated assertion, Dunn had argued "with some persuasiveness" that the evidence in the record did *not* support a finding that he was intoxicated, especially because he was not arrested for—nor charged with— driving under the influence. *Id.* at *3 n.1.

Regarding the "search pursuant to the police department's towing policy" basis, the judge concluded that Minneapolis Police Department policy clearly permitted officers to tow and impound a vehicle when it " 'impedes traffic, threatens public safety, or threatens public convenience and the owner/driver cannot immediately remove the vehicle on his/her own.' " *Id.* Moreover, the judge noted, the policy expressly stated that officers need not defer to an owner's private towing arrangements and must conduct an inventory search of the vehicle prior to towing and impoundment. *Id.* Because Dunn's vehicle had "sustained significant damage to its front end," "had a flat tire," "was blocking traffic . . . and facing the wrong way," the officers' decision to tow his car was, the judge held, "squarely within the department's policy." *Id.* Moreover, any private towing arrangements made by Dunn were irrelevant because police policy did not require officers to defer to such arrangements. *Id.* at *4. As such, the judge held that the evidence obtained during the April 12 search was not subject to suppression. *Id.*

Dunn objected to the magistrate judge's report and recommendation, arguing that the judge had erred by (1) permitting police to disregard the fact that private towing arrangements

4

were already made in order to conduct an involuntary pretextual search; and (2) because there was little, if any, evidence that Dunn was intoxicated, rendering his arrest, and the subsequent search of his vehicle, pretextual. (*See* Dunn Obj.'s to R&R [Doc. No. 40] at 1–2.) On January 19, 2018, this Court overruled Defendant's objections, adopted the report and recommendation in its entirety, and denied Dunn's motion to suppress. *See Dunn*, 2018 WL 481846, at *1, 4. With respect to the April 12th incident, the Court held that the magistrate judge had not erred because an inventory search of a vehicle need only be "reasonable under the totality of the circumstances," which occurs when the search is conducted according to standardized police procedures. *Id.* at *3 (citation omitted). Because the policy permitted the police to disregard whether private towing arrangements had been made, and because Dunn cited no authority to the contrary, the Court held that the April 12th search was lawful. *Id.* With respect to Dunn's argument about the lack of any intoxication evidence, the Court noted that because Dunn's vehicle was blocking traffic, the lack of any field sobriety testing was immaterial to the application of the towing policy. *Id.* at *3 n.1.

On February 2, 2018, Dunn pleaded guilty to count one (felon in possession of a firearm) and count three (carrying a firearm during and in relation to a drug trafficking crime). (*See* Plea Agreement [Doc. No. 48] at 1.) Dunn reserved the right to appeal the denial of his suppression motion. (*Id.* at 7–8.) The Court imposed a 57-month sentence on count one, and a 60-month sentence on count three. (*See* Dunn Sentencing Judgment [Doc. No. 65].)

### B. Appeal to the Eighth Circuit

By and through counsel, Dunn appealed to the Eighth Circuit. (*See* Notice of Appeal [Doc. No. 69].) He argued, among other things, that the April 12th inventory search of his

vehicle was unreasonable because Minneapolis police "should have waited and deferred to his private towing arrangements rather than impounding his vehicle." *Dunn*, 928 F.3d at 692. The Eighth Circuit rejected his argument, noting that he cited "no legal authority for this proposition, nor any legal authority showing that the Minneapolis Police Department's towing policy [was] unreasonable." *Id.* at 693. Moreover, Dunn admitted that the officers followed the policy as written. *Id.* Accordingly, the Eighth Circuit held that the April 12th search of Dunn's vehicle was reasonable and affirmed this Court's denial of his motion to suppress evidence gathered during that search. *Id.*[1]

### C. The Present § 2255 Motion

On October 15, 2019, Dunn filed the present Motion to Vacate, Set Aside, or Correct Sentence. (*See* Doc. No. 88.) He asserts that he received ineffective assistance of counsel, both before this Court and the Eighth Circuit, because his counsel failed to argue that his arrest on April 12, 2017 lacked probable cause, which in turn led to the inventory search of his vehicle and the discovery of evidence against him. (*Id.* at 7 ("[W]hat [counsel] should have argued was that it was the 'arrest' that was illegal because it lacked probable cause, and [it led] directly to the search and the discovery of the contraband.") The United States opposes the motion. (*See* Gov't Opp'n Mem. [Doc. No. 90] at 1.)

---

[1] The Eighth Circuit also affirmed the denial of Dunn's motion with respect to the June 20th search, and affirmed Dunn's sentence. *See Dunn*, 928 F.3d at 693–94.

6

## II. DISCUSSION

### A. Applicable Legal Standard

Section 2255 provides "federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (citation omitted) (internal quotation marks omitted). The statute's language states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

While § 2255's language is broad, its remedy " 'does not encompass all claimed errors in conviction and sentencing.' " *Sun Bear*, 655 F.3d at 704 (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Rather, it encompasses "jurisdictional and constitutional errors," and only extends to errors of law where the " 'claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.' " *Id.* (quoting *Addonizio*, 442 U.S. at 185 (internal quotation marks omitted)); *see also Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (noting § 2255 relief is "reserved for transgressions of constitutional rights and [] a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice" (citation omitted) (internal quotation marks omitted)). When seeking relief under § 2255, "[t]he movant bears the burden to prove each ground entitling relief." *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

Dunn's ineffective assistance claim is properly before the Court. *See United States v. Nguyen*, 371 Fed App'x 701, 702 n.3 (8th Cir. 2010) (noting that ineffective assistance of counsel claims are "usually best litigated in collateral proceedings" such as § 2255 motions). Accordingly, the Court turns to the merits of Dunn's claim.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, the Supreme Court held that this provision grants " 'the right to the *effective* assistance of counsel.' " 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Notably, this right extends to both trial counsel and appellate counsel. *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003), *cert. denied*, 540 U.S. 1094 (2003).

#### 1. *Strickland* Test

*Strickland* set forth a two-pronged test for evaluating claims of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. To show ineffective assistance, a defendant must "demonstrate both that his attorney's performance 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (quoting *Strickland*, 466 U.S. at 687–88), *cert. denied*, 2020 WL 129956, ___ S. Ct. ___ (2020)). To establish the first prong and show deficient performance, a defendant must show that " 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.' " *Guzman-Ortiz v. United States*, 849 F.3d 708, 713 (8th Cir. 2017) (quoting *Strickland*, 466

U.S. at 687). To establish the second prong and show prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).

Ineffective assistance claims are analyzed in the context of the " 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]' " *Guzman-Ortiz*, 849 F.3d at 713 (quoting *Strickland*, 466 U.S. at 689). Moreover, the Court need not determine whether an attorney's performance was deficient before examining whether the defendant suffered any prejudice if it is "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Nelson v. United States*, 909 F.3d 964, 970 (8th Cir. 2018). "Prejudice is not shown if the evidence is so strong that the outcome of the case could hardly have been other than a verdict of guilty." *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001).

### 2. Party Arguments

Dunn contends that he received ineffective assistance before both this Court and the Eighth Circuit because his attorney failed to argue that his April 12, 2017 arrest lacked probable cause and was therefore illegal. (Def.'s Mem. at 7.) More specifically, Dunn notes that Minneapolis Police Department policy permits officers to tow and impound a vehicle where it impedes traffic, threatens public safety, or threatens public convenience "*and the owner/driver cannot immediately remove the vehicle on his or her own.*" (*Id.* (emphasis added).) He asserts that his attorney never argued that because his arrest was illegal, he was unlawfully detained in a squad car, and that this unlawful detainment rendered him unable to

9

move his vehicle on his own. (*Id.*) Because he could not move the vehicle—and because, he asserts, the vehicle could have been moved had he been given the chance—the officers essentially created a situation in which they could search and tow his vehicle, which in turn led to the discovery of the contraband. (*Id.*)

In response, the Government argues that Dunn's trial counsel *did* argue that there was insufficient probable cause to support Dunn's arrest, and that the argument was considered by both the magistrate judge and this Court. (Gov't Opp'n Mem. at 5–6.) Moreover, the Government notes, while Dunn's counsel focused on the towing and inventory issue before the Eighth Circuit—and not the lack of any probable cause for Dunn's arrest—that choice constituted a selective "winnowing" of the issues for appeal that is the "hallmark of effective advocacy" expected by courts. (*Id.* at 6–7 (citations omitted) (internal quotation marks omitted).) In any event, even if counsel should have raised the issue on appeal, the Government argues that Dunn cannot show prejudice because his argument is meritless given the reasonableness of the Minneapolis police department's towing policy. (*Id.* at 7.)

### 3. Analysis

The Court holds that Dunn cannot satisfy either prong of the *Strickland* test, and accordingly denies his § 2255 motion. At the trial level, Dunn's counsel *did* argue that the search of Dunn's vehicle was illegal *because* his arrest was illegal. Specifically, counsel noted that "[a]lthough the police are allowed to search a car's interior following the custodial arrest of its driver . . . the initial arrest must be supported by the requisite probable cause to arrest." (Def.'s Mem. in Supp. of Mot. to Suppress Evid. [Doc. No. 35] at 3.) In Dunn's case, counsel argued, there was no probable cause at all. (*Id.*) Counsel noted the "stark" lack of

"any evidence regarding alcohol or drug consumption being involved[,]" and highlighted that Dunn was licensed to drive, had up-to-date insurance on his vehicle, had made private towing arrangements following the accident, and had informed officers that he had fallen asleep at the wheel. (*Id.*) Under those circumstances, counsel argued, there was no legal basis to support Dunn's arrest, which had rendered Dunn "unable to move his vehicle," pursuant to the Minneapolis Police Department policy, "as he had been immediately handcuffed and place din the rear of [a] squad car" after police arrived. (*Id.* at 2–3.) Dunn's counsel also pursued this argument to this Court after the magistrate judge recommended denying his motion to suppress. (*See* Dunn Obj.'s to R&R at 1–2 (arguing that lack of intoxication evidence rendered his arrest, and the subsequent search of his vehicle, pretextual).) Put simply, Dunn's counsel repeatedly asserted the argument Dunn now says he failed to do, which means Dunn cannot establish that his counsel was deficient.

Even assuming, for the sake of argument, that Dunn's counsel was deficient, Dunn cannot show prejudice because he cannot show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Guzman-Ortiz*, 849 F.3d at 713 (quoting *Hill*, 474 U.S. at 57). As the magistrate judge, this Court, and the Eighth Circuit all noted, Dunn's vehicle was unmovable, undriveable, or at the very least, unsafe to drive. *See Dunn*, 928 F.3d at 690 (noting that the accident "rendered [Dunn's] vehicle undriveable"); *Dunn*, 2018 WL 481846, at *1 (noting Dunn's vehicle "could not be driven safely due to the extensive damage to its front end as well as a flat tire"); *Dunn*, 2017 WL 9274917, at *2 (noting that Dunn's vehicle "was blocking traffic and had sustained sufficient damage to seem unmovable"). Dunn himself admitted at

11

the suppression hearing that he did not know if the vehicle was drivable and that he never tried to see if it could be driven, instead choosing to call a tow truck. (H'rg Tr. at 128, 130.) He also admitted that the vehicle had suffered "pretty extensive damage," and was blocking traffic. (*Id.* at 130–32.) Accordingly, the fact that Dunn could not attempt to move the vehicle after being arrested is irrelevant because even if he had been given the opportunity, the record shows that the vehicle could not be safely moved. Given its unmovable status and its location blocking traffic, the vehicle was a danger to public safety. Under the Minneapolis Police Department policy, officers were permitted—without deference to Dunn's private towing arrangements—to arrange for their own towing service and, also in line with policy, conduct an inventory search. *See Dunn*, 928 F.3d at 692–93 (concluding officers followed policy in towing and searching Dunn's vehicle). Accordingly, even if Dunn's counsel was deficient in failing to more explicitly connect Dunn's arrest to the department policy provisions, he cannot show a reasonable probability that, had counsel done so, the result of Dunn's motion to suppress would have been any different. *See Guzman-Ortiz*, 849 F.3d at 713. With respect to his counsel's performance before this Court, Dunn cannot establish ineffective assistance.

Dunn's claim of ineffective assistance regarding his appellate counsel's performance fares no better. Before the Eighth Circuit, Dunn's counsel continued to argue that the government lacked probable cause to arrest Dunn given the lack of any evidence of intoxication. (Appellant Br. [8th Cir. Docket #18-2393] at 9.) His counsel also argued that "[t]he government essentially conceded the issue of probable cause to arrest" when it relied on the Minneapolis Police Department's policy as a valid basis for the warrantless search of Dunn's vehicle. (*Id.* at 9–10.) Further, given his illegal arrest, counsel argued, "the

12

warrantless search of [] Dunn's car . . . was illegal" because the inventory search stemming from his arrest was not reasonable under the totality of the circumstances. (*Id.* at 10.) So, while the explicit connection between Dunn's confinement in a squad car and subsequent inability to move his vehicle was not made, the substance of the argument Dunn claims his counsel should have made was, in fact, advanced on appeal. In any event, even assuming Dunn's counsel could have—or should have—more explicitly connected those two points, and further assuming such a failure was deficient performance, Dunn cannot show prejudice because, as noted above, his vehicle was unmovable in light of the damage it had sustained. *See Dunn*, 928 F.3d at 690; *Dunn*, 2018 WL 481846, at *1; *Dunn*, 2017 WL 9274917, at *2. Accordingly, Dunn cannot show prejudice because his argument is itself meritless. *See Kitt v. Clarke*, 931 F.2d 1246, 1250 (8th Cir. 1991) (noting that appellate counsel's failure to raise meritless arguments on appeal cannot constitute ineffective assistance).

In summary, Dunn has failed to establish that he received ineffective assistance at either the trial or appellate level, and accordingly, his § 2255 motion is denied in its entirety.

### C.    Evidentiary Hearing and Certificate of Appealability

It does not appear to the Court that Dunn has requested an evidentiary hearing or certificate of appealability. Nevertheless, the Court notes that based on the record before the Court, there is no basis to conduct an evidentiary hearing. A § 2255 motion may be dismissed without a hearing if: (1) Defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all

the information necessary for the Court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that the record here includes all such information. Accordingly, no evidentiary hearing is required here.

The Court reaches the same conclusion with respect to a certificate of appealability. In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B) (2018). A court cannot grant a certificate unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Having considered the issues in this matter, the Court holds that no issue raised is "debatable among reasonable jurists." *Fleiger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

### III.  CONCLUSION

Based on the submission and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Kalil Wesley Dunn's Motion to Vacate, Set Aside, or Correct Sentence [Doc. No. 88] is **DENIED**. Additionally, to the extent Dunn has requested an evidentiary hearing or certificate of appealability, both requests are also **DENIED**.
**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 2, 2020
s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge