# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 17-cr-168 (SRN/KMM) |
| Plaintiff, | |
| v. | **ORDER** |
| Kalil Wesley Dunn, | |
| Defendant. | |

Thomas Calhoun-Lopez, United States Attorney's Office, 300 S. 4th St. Ste 600, Minneapolis MN 55415, for the Government.

Andrew H. Mohring, Office of the Federal Defender, 300 S. 4th St. Ste 107, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Kalil Wesley Dunn's Motions for Release (("Motions for Release") [Doc. Nos. 106, 116]) pursuant to 18 U.S.C. § 3582(c)(1)(A).[1]  Mr. Dunn seeks compassionate release and requests that the Court reduce his prison sentence to a supervised release term due to the dangers posed by COVID-19.  The Government filed two responses in opposition to his Motions for Release.  (Gov't's Opp'n [Doc. Nos. 111, 122].)

---

[1]    Mr. Dunn initially filed a pro se motion with the Court seeking compassionate release, [Doc. No. 106], which was followed by a motion and memorandum submitted by his counsel.  [Doc. Nos. 116-117.]

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motions.

## I.   BACKGROUND

### A.   Procedural and Factual Background

In February 2018, Mr. Dunn pled guilty to being a felon in possession of a firearm and carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924 (c)(1)(A).   [Doc. No. 48.]   On June 4, 2018, the Court sentenced Mr. Dunn to a 117-month term of imprisonment.  [Doc. No. 65.]

On May 5, 2020, Mr. Dunn filed a pro se motion [Doc. No. 106] seeking compassionate release, and was appointed counsel on June 24, 2020 [Doc. No. 115].  He is currently incarcerated at FCI-Pekin in Illinois, and has a projected release date of September 25, 2025.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed August 12, 2020).

### B.   Parties' Positions

Mr. Dunn seeks compassionate release in light of the risks associated with the COVID-19 pandemic.  (Def.'s Mem. in Supp. Of Mot. for Compassionate Release ("Def.'s Mem.") [Doc. No. 117] at 1-2.)  He argues that his preexisting health issues—which are documented in the Bureau of Prisons ("BOP") Medical Records—make him uniquely susceptible to COVID-19.  Specifically, he asserts that he is susceptible to the virus because he suffers from asthma and "an array of mental health conditions," resulting in a "particularly compromised respiratory system" and "weakened immune response."  (*Id.* at 2-3.)  Moreover, although he concedes that FCI-Pekin has "only recently confirmed its first

2

active case of COVID-19," he contends that a "vulnerable prisoner" should not have to wait until a confirmed outbreak before seeking release.  (*Id.* at 10.)  Citing 18 U.S.C. § 3582(c)(1)(A), he argues that these risks present "extraordinary and compelling reasons" to grant his request for compassionate release.

In opposition, the Government makes several arguments. [2]  First, the Government argues that Mr. Dunn has not demonstrated extraordinary and compelling reasons that would justify compassionate release.  (Govt's Suppl. Opp'n [Doc. No. 122] at 9.) Specifically, the Government argues that Mr. Dunn's asthma is not sufficiently severe to significantly elevate his risk of contracting COVID-19, and notes that his asthma is "self-reported."  (*Id.* at 10-11.)  With respect to his mental health conditions, the Government argues that such conditions do not justify compassionate release because they are not recognized as risk factors under the guidelines promulgated by the Centers for Disease Control and Prevention ("CDC").  (*Id.*)  The Government also maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities, emphasizing the low reported infection rate at FCI-Pekin.  (*Id.* at 11.)  Finally, the Government argues that Mr. Dunn would pose a danger to the community if released, arguing that his offenses "were in connection with gang activity" and that prior arrests and charges did not deter him from future offenses.  (*Id.* at 12.)

---

[2]     The Government does not assert that Mr. Dunn has failed to exhaust his administrative remedies prior to seeking relief from the Court because he appears to have made a request for compassionate release to the warden, which was denied May 29, 2020.  (Def.'s Ex. A [Doc. No. 118] at 1.)

## II.     DISCUSSION

### A.     The Law

A court may not modify a term of imprisonment once it has been imposed, except pursuant to statute. *United States v. Kachina*, 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also United States v. McIndoo*, -- F. Supp. 3d --, 2020 WL 2201970, at *2 (W.D.N.Y. May 6, 2020).  The compassionate release provision, as amended by the First Step Act, is such a statutory exception.  18 U.S.C. § 3582(c)(1)(A).

The First Step Act[3] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release.  *United States v. Stephenson*, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020).  Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court.  *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018).  The amended provision provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that ... the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the

---

[3]     The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

> term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id*. The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). The policy statement also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described

categories."[4] *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at

*3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended

statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this

district, have found that the following three issues must be considered in evaluating a

compassionate release application: (1) whether "extraordinary and compelling reasons

warrant a sentence reduction consistent with the Sentencing Commission's policy

statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are

applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a

danger to the safety of any other person or to the community." *United States v. White*, 13-

cr-20653, 2020 WL 2557077 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong*

*Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019) (citing *United*

*States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019) (further citations

---

[4]      Although the policy language only allows the Director of the BOP to identify other
grounds that amount to "extraordinary and compelling reasons," the Court agrees with
numerous district courts, including in this Circuit, that have interpreted this provision to
allow courts, in addition to the Director, the discretion to consider other relevant factors.
*See United States v. Ramirez*, 2020 WL 2404858 (D. Mass. May 12, 2020) (collecting cases
and finding that courts "have the authority to consider other relevant factors" because such
an interpretation "best comports with the First Step Act."); *see also United States v. Brown*,
-- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the
district court assumes the same discretion as the BOP Director when it considers a
compassionate release motion properly before it.").   The Eighth Circuit has recently
reinforced the district court's discretion to "expand the use of compassionate release" with
the passage of the First Step Act.  *United States v. Rodd,* No. 19-3498, 2020 WL 4006427,
at *6 (8th Cir. July 16, 2020) (noting that it need not determine whether the district court
erred in adhering to the Commission's policy statement because the district court "knew
its discretion" to assume a more expansive definition of "extraordinary and compelling
reasons" under the First Step Act) (internal quotation and citation omitted).

omitted)); *see also United States v. Edison*, No. 12-cr-225 (DWF), 2020 WL 3871447, at *2-3 (D. Minn. July 9, 2020).

Moreover, as the movant, the defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at *4 (D.N.D. May 19, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)); *see also United States v. Morrison*, 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted); *United States v. Cabrera*, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted).

### B.    Analysis

The Court now considers whether release under these facts is warranted.  As explained above, the Sentencing Commission's guidance states that an inmate's medical condition, alone, can sometimes be sufficiently extraordinary and compelling under § 3582(c)(1)(A).  U.S.S.G. § 1B1.13 cmt. 1(A)(i) (noting that the condition must be "serious and advanced with an end of life trajectory" or "substantially diminish the ability of the inmate to provide self-care" within the facility and be one "from which he or she is not expected to recover."). Alternatively, an inmate's serious medical condition "in combination with" additional factors may also justify sentence reduction. U.S.S.G.§ 1B1.13 cmt. n.1(A)-(D).

Here, Mr. Dunn argues that the COVID-19 pandemic, in combination with his medical conditions, warrants compassionate release.  Although the Court does not intend

to diminish the risk of COVID-19 in the federal prison system, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, --F. Supp. 3d--, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).

Against these standards, Mr. Dunn fails to present extraordinary and compelling reasons for his release.  Mr. Dunn, who is 28 years old, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications.  CDC, *Coronavirus Disease 2019: People Who Are At Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed August 12, 2020). Nonetheless, he asserts that he has several conditions, including asthma and an "array of mental conditions," such as "anxiety, depression, ADHD, ODD, and panic disorder,"

8

which make him more vulnerable to becoming seriously ill should he contract COVID-19. (Def.'s Mem. at 2; Def.'s Reply [Doc. No. 123] at 11.)

Based upon the present record, the Court finds that Mr. Dunn's medical conditions fail to present extraordinary and compelling reasons that warrant release. While the Court is sympathetic to his significant mental health disorders, which appear to be further exacerbated by the pandemic, none of these conditions have been identified by the CDC as specifically increasing the risk of developing serious illness from COVID-19. *See, e.g.,* *United States v. James*, No. 15-cr-255 (SRN), 2020 WL 3567835 at *4 (D. Minn. July 1, 2020) (collecting cases).

In response, Mr. Dunn relies on expert testimony submitted in *United States v. Kellogg,* No. 12-cr-383 (CAP/JCF) (N.D. Ga. July 8, 2020) to assert that "high levels of chronic stress render someone immunocompromised as described by the CDC." (Def.'s Reply at 11.) In *Kellogg,* however, the expert reviewed the defendant's medical records and determined that "his asthma and panic disorder make him particularly vulnerable to COVID-19." *Id.* at 6. His medical records indicated that he suffered from a "panic disorder, formally diagnosed in 2014, which was being treated with Zoloft." (*Id.*) In contrast, here, Mr. Dunn's presentence investigation report indicates that he complied with one psychiatric evaluation which resulted in diagnoses that included (1) Attention Deficit Hyperactivity Disorder Combined Type ("ADHD"); (2) Oppositional Defiant Disorder; and (3) Mood Disorder and Cognitive Disorder, which is reported to be "secondary" to his "traumatic brain injury," resulting from a car crash. (PSR ¶¶ 53, 56.) Although Mr. Dunn argues that he suffers from "anxiety, depression, and ADHD," (Def.'s Reply at 10), the

record is unclear as to whether these disorders rise to the level of a formally diagnosed panic disorder like in *Kellogg*. The Court therefore finds that the expert's specific review of the defendant's medical records in *Kellogg* has limited persuasiveness here. The Court is therefore unable to find that Mr. Dunn is at an elevated risk of developing the more severe symptoms of COVID-19 as a result of his mental disorders. *See United States v. Busby*, No. 15-cr-00353 (GMN/NJK), 2020 WL 3883652, at *3 (D. Nev. July 8, 2020) ("Given how speculative the relationship is between mental illness and the body's ability to fight COVID-19, the Court does not find that the relationship is an extraordinary and compelling reason for [d]efendant's release.").

Regarding his asthma, the parties agree that recent guidance from the CDC indicate that those suffering from "moderate to severe asthma" may be at an increased risk of severe complications from COVID-19. The Government argues that there is no indication in Mr. Dunn's medical records that his asthma is moderate or severe, but does not deny that the records indicate his on-going treatment for asthma. (*See* Gov't Ex. 1 at 4, 17, 19, 24, 40.) Nonetheless, the Government asserts that his medical records indicate that he "self-reports" his asthma as only "mild" and "intermittent." (*Id.* at 40.) It further notes that his condition is described as "well controlled" on several clinical visits and that his treatment for his asthma was only needed with "exercise on occasion" in 2019. (*Id.* at 17, 24, 26, 29) (medical records stating that Mr. Dunn "[u]ses albuterol with exercise on occasion").

Mr. Dunn, on the other hand, contends that asthma classifications between "mild, moderate, and severe asthma" is based on both "symptoms and lung function tests." (Def.'s Mem. at 21) (citing *Classification of Asthma*, MICHIGAN MEDICINE (2020)

https://www.uofmhealth.org/healthlibrary/hw161158)).  Thus, according to Mr. Dunn, if a

lung function test has not been conducted, the severity of the asthma is not necessarily

clear.  (*Id.*)  Moreover, even if he reported his asthma as "mild" in 2019, he argues that

these classifications are "dynamic" with the possibility of "chang[ing] over time."  (*Id*. at

21) (citing Diana Wells, *Asthma Classification,* HEALTHLINE (Jan. 19, 2019)

https://www.healthline.com/health/asthma/asthma-classification#mild-intermittent-

asthma)).  In fact, he contends that his medical records demonstrate that he was having

trouble controlling his asthma in late April 2020, and that he was instructed to increase the

use of his albuterol inhaler.  (Def.'s Mem. at 21; *see also* Gov't Ex. 1 at 4.)  He argues that

he continued to have breathing problems, and his inhaler did not provide relief.  (Def.'s

Mem. at 21; *see also* Def.'s Ex. B [Doc. No. 118] at 1.)

    In response to his reported asthma exacerbation in April 2020, he contends that the

doctor informed him "there was nothing he could do until [Mr. Dunn] had a full asthma

attack," which could be "deadly" under the circumstances.  (Def.'s Ex. B.)  A review of

his medical records indicate, however, that he was informed to "notify medical" in the case

of an attack because he specifically "denie[d] any shortness of breath" and "appear[ed] to

be in no distress" during that clinical visit.  (Gov't's Ex. 1 at 4.)  Moreover, while he

contends that he was "rejected" from getting a new inhaler or treatment program, (Def.'s

Mem. at 21), the evidence he submitted demonstrates that the BOP allowed him to place a

refill on his inhaler, or schedule a follow-up doctor visit.  (Def.'s Ex. B at 1.)  He was also

informed by the BOP on April 27, 2020 to report any "current respiratory distress" to

medical staff, but there is no indication in the record that he has done so.

Nonetheless, based on the present record, Mr. Dunn relies heavily on *United States v. Reed*, No. 9-cr-160 (PAM), 2020 WL 3960251, at *1-2 (D. Minn. July 13, 2020) to urge the Court to recognize his asthma as an increased risk for complications should he contract COVID-19.  (Def.'s Reply at 9-10.)  In *Reed*, the inmate was granted compassionate release because, in part, the evidence demonstrated that he suffered from "frequent asthma attacks" and "complications from his asthma, in addition to needing significant medication to treat the condition."  *Id*. at *1.  Specifically, he required "both an inhaler and nebulizer to manage his condition."  *Id*.

The Court finds *Reed* distinguishable from this case.  Here, unlike in *Reed*, the BOP medical records do not indicate that Mr. Dunn suffers from frequent asthma attacks nor does it describe any complications he suffers from his asthma.  (*See* Gov't's Ex. 1 at 4, 17, 19, 24, 40.)  Thus, the Court is unable to find that Mr. Dunn's asthma, alone, places him at risk of severe illness should he contract COVID-19.  *See*, *e.g*., *United States v. Miller*, No. 12-cr-00133 (SEB/TAB), 2020 WL 4192895, at *4 (S.D. Ind. July 21, 2020) (denying compassionate release where 41-year-old inmate's asthma was well-controlled); *United States v. Wilson*, No. 7- cr-132 (MCR), 2020 WL 4193624, at *2 (M.D. Fla. July 21, 2020) (denying compassionate release to otherwise healthy 43-year-old inmate with high blood pressure and asthma not alleged to be moderate or severe).

Moreover, even assuming that his asthma and mental health conditions elevate his risk of serious illness should he contract the virus, the Court finds that the record does not demonstrate that the present conditions at the facility uniquely increase his risk of contracting COVID-19.  To date, although three staff members are reported to have been

diagnosed with the virus, the facility currently has only one reported case of an inmate having contracted COVID-19.   BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/ (last accessed August 12, 2020).   Thus, the facility appears to be largely successful at stopping any spread of the virus as of this writing.   The Government maintains that the BOP is taking careful steps to contain the virus.[5]   (Gov't's Supp. Opp'n at 5.)   Additionally, there is no indication that FCI-Pekin will be unable to handle an outbreak at this time or otherwise accommodate Mr. Dunn's specific health concerns should he contract the virus.

In sum, the Court finds that Mr. Dunn's medical conditions do not warrant compassionate release.   Mr. Dunn has not contracted the virus, and his medical conditions, in light of his relatively young age and access to medication, do not fall in the category of illnesses with an end-of-life trajectory, or other reasons, under the Guidelines.   A reduction in sentence would not be consistent with the policy statements issued by the Sentencing Commission.   The Court further finds that no other compelling circumstances support his request.   While Mr. Dunn's participation in a series of educational courses is highly encouraging, (Def.'s Mem. at 28), a reduction of his current sentence by approximately sixty months would not "promote respect for the law, provide just

---

[5]      Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP Modified Operations, https://www.bop.gov/coronavirus/covid19 status.jsp (last accessed August 12, 2020).

punishment, afford adequate deterrence, []protect the public from further crimes" nor

"reflect the seriousness of his offense." *United States v. Zigler*, No. 11-cr-304 (SRN/JSM),

2020 U.S. Dist. LEXIS 112384, at \*18 (D. Minn. June 26, 2020) (citing 18 U.S.C §

3553(a) (further citation omitted)).[6]

Taking into consideration all of the § 3553(a) factors, the Court continues to find

that the sentence imposed is just and fair under the totality of the circumstances. *See, e.g.*,

*United States v. Rodd,* No. 19-3498, 2020 WL 4006427, at \*7 (8th Cir. July 16, 2020)

(finding that the district court did not abuse its discretion in denying a compassionate

release motion when lower court noted its consideration of the § 3553(a) factors at

sentencing).

Finally, Mr. Dunn has not established that he does not present a danger upon

immediate release. *See* 18 U.S.C. § 3582(c)(1)(A). While he argues to the contrary

because of his post-offense conduct, (Def.'s Reply at 13-14), the Court is not convinced,

given the seriousness of his prior offenses. Indeed, his underlying conviction involved

drug trafficking activities that were in connection with gang activity. When he was

arrested in possession of cocaine on April 12, 2017, he was carrying two firearms, one of

which had the words "DIE Yk" etched onto it. (PSR ¶ 7.) As noted in his presentence

investigation report, this etching is a threatening reference to rival North Minneapolis

---

[6]     Moreover, the Court notes that rehabilitation alone is not a basis for compassionate release. *See* U.S.S.G. § 1B1.13 cmt. n.3 ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for the purposes of this policy statement.").

gangs.  (*Id*.)  Consistent with that etching, the firearm had been used in a shooting in rival, gang territory.  (*Id*.)  After this arrest in April, Mr. Dunn was again arrested approximately two months later in June 2017 for possession of cocaine and a firearm.  (PSR ¶ 10.)  This particular firearm included a "drum magazine" capable of holding 50 rounds.  (*Id*.)  Thus, prior to his incarceration, Mr. Dunn had resumed his drug distribution and firearms activities even after he had been arrested for the same offense in April, and even while charges in that case were pending.  His prior arrest and pending charges failed to deter him from his criminal activities.

Accordingly, for all of the reasons stated above, Defendant's Motions for Release are denied.

**III.    ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant's Motions for Release [Doc. Nos. 106, 116] are **DENIED**.

Dated:   August 13, 2020                                    s/Susan Richard Nelson
                                                                    SUSAN RICHARD NELSON
                                                                    United States District Judge